(No. 14955.—Judgment reversed.)

THE PEOPLE ex rel. George Duckwitz et al. Appellees, vs.
M. B. BROWN et al. Appellants.

*Opinion filed December 19, 1922—Rehearing denied Feb. 8, 1923.*

1. SCHOOLS—*when notices of election to organize a community high school district are sufficient.* Notices of an election to organize a community high school district sufficiently comply with the statute where a notice is posted in each of the twelve common school districts embraced within the territory to be organized, designating the polling place in each district; and it is not necessary that each notice contain a list of all the polling places.

2. SAME—*general election laws apply to school elections.* The general election laws apply to school elections unless otherwise expressly provided.

3. SAME—*Ballot law does not now apply to elections for community high school districts.* The provision of section 89a of the School law, for the organization of community high school districts, that elections in such districts shall be governed by section 86, which, as amended in 1917, provided that elections be held under the Australian Ballot law, does not now require that elections be so held, as the provision of section 86 was repealed in 1921.

4. SAME—*when community high school district is compact and contiguous.* The organization of a community high school district is not invalid because of the size and shape of its territory, where it appears that the greatest length of the district east and west is eight miles and that it is nine and one-half miles north and south and that the school building is to be built in a city which is practically in the center of the district. (*People* v. *Patterson,* 305 Ill. 541, followed.)

5. STATUTES—*statutes must be construed according to intent.* A fundamental rule in the construction of statutes is that effect must be given to the legislative intent even though such intent may not be within the letter of the statute.

6. ELECTIONS—*when irregularities will not invalidate an election.* Irregularities do not invalidate an election where it does not appear that any voter was prevented from voting as he desired or that the result of the election was in any way affected.

APPEAL from the Circuit Court of Effingham county; the Hon. F. R. DOVE, Judge, presiding.

WALTER C. KLITZING, and G. F. TAYLOR, for appellants.

BYRON PIPER, and LESTER WRIGHT, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This appeal is prosecuted from a judgment of the circuit court in a *quo warranto* proceeding to oust appellants from the office, duties and powers of members of the board of education of Community High School District No. 82, in Effingham county. Relators (hereafter called appellees) presented their petition to the circuit court for leave to file an information in the nature of *quo warranto*. The petition alleges the county superintendent of schools did not cause to be posted valid legal notices of the election to establish a district; that the election to establish the district and the subsequent election of a board of education were not conducted in the manner required by the Australian Ballot law. Leave was granted and the information was filed. It contained three counts. Appellants filed their plea setting out their title to the office, whereupon appellees asked and were granted leave to file an amended information. Count 1 of the amended information alleged the county superintendent of schools designated the school house in each of the twelve districts embraced in the proposed community high school district as the polling places but failed to post ten notices designating all the polling places in each notice posted. Count 2 avers the election was not held under the provisions of the Australian Ballot law. The third count alleges the same failure to give notice as alleged in count 1, and further alleges that at some of the polling places where votes were cast there were certain irregularities, specified, in the manner of conducting the election. An additional count was filed to the amended information, alleging the district is not compact and contiguous; that its greatest length east and west is eight miles and north and south nine and one-half miles; that the school house would

be built in the city of Altamont, which is about four miles from the south line of the district, five and one-half miles from the north line, five miles from the east line and three miles from the west line; that pupils living in the district would have to travel from six to ten miles; that the roads through the territory are bad and impassable during the greater part of the school year; that on account of hills in the southeast part of the district and the condition of the roads the pupils would be unable to reach the school house. Appellants demurred to the entire amended information. The demurrer was sustained to the first and second counts but overruled as to the third and additional counts. Appellants stood by their demurrer and the court rendered judgment of ouster against them, from which judgment this appeal is prosecuted.

Appellees have assigned cross-errors on the ruling of the court in sustaining the demurrer to counts 1 and 2.

The information set out the reasons relied on for asking a judgment of ouster. This is not the usual practice in *quo warranto* proceedings but is not without precedent.

We will first consider the cross-errors. The point made under the first count was that valid notices of the election to organize the district were not posted by the county superintendent of schools. No copy of the notices posted or their form is in the abstract. It is not claimed that the required number of notices was not posted, but as we understand the briefs the complaint is that all the polling places designated were not given in each notice. There were twelve common school districts embraced in the territory proposed to be organized into a community high school district. The county superintendent designated each of the twelve school houses as a polling place, and, as we understand, a notice of the election was posted in each, designating the school house in the district where the notice was posted as a polling place. This was sufficient to inform the electors where they might cast their votes and was a substan-

tial compliance with the law, which is all that is required in that respect. *City of Chicago* v. *People,* 80 Ill. 496; *People* v. *Darrough,* 266 id. 506.

The second count is based on the theory that the elections to establish the district and for the board of education are governed by and required to be conducted under the Australian Ballot law. The determination of that question will require reference to a number of acts of the legislature.

The general election laws apply to school elections unless otherwise expressly provided. In 1909 it was deemed advisable to revise and arrange in an orderly manner the entire legislation pertaining to the maintenance of a system of free schools. The revised act was passed, approved and went into effect June 12, 1909. Section 86 of the revised act of 1909 related solely to the election of boards of education where the people had voted to establish township high schools. The elections for the organization of township high schools and boards of education for such schools were to be held in the manner provided by law for the election of township trustees of schools. Section 26 of the revised act provided for the election of trustees of schools in the manner prescribed by the general election laws for the election of magistrates and constables.

In 1917 an act was passed to amend section 86 of the act of 1909 as amended in 1911. By the 1917 amendment to section 86 it was provided that elections for members of the boards of education for township high schools should be held under the Australian Ballot law. Section 85 was not amended, and the method of conducting the elections for the organization of township high schools was not mentioned. That subject is provided for in section 85.

In 1919 the revised act of 1909 was amended by adding to it a section numbered 89*a,* and at the same session another act was passed amending section 86 of the revised act. Section 89*a* authorized elections to establish community high schools and elections for members of the boards of

education for such schools. That act did not amend section 86 or any other section of the School law but provided a method for establishing a community high school district and electing a board of education. It contained a provision that "the manner of holding elections shall be governed by section 86 of this act." The amendment of 1917 to section 86 required elections for members of boards of education of township high schools to be conducted under the provisions of the Australian Ballot law. The title of the act of 1919 was, "An act to amend an act entitled 'An act to establish and maintain a system of free schools,' approved and in force June 12, 1909, by adding thereto a section to be numbered 89a." Section 1 recites that the act approved and in force June 12, 1909, be amended by adding a section to be numbered 89a. Then follows the amendment. No reference is made to the act of 1909 "as amended."

Appellants contend that section 86 of the act of 1909 as originally enacted was incorporated in the act of 1919; that the amendment of 1917 was not incorporated and does not control; that if the amendment of 1917 be held to have been incorporated in the amendment of 1919, then it must follow that the amendment of 1921 controls the elections to establish community high schools and to elect boards of education. Appellees contend that the act of 1919 adding section 89a to the revised School law of 1909 adopted section 86, as amended in 1917, by reference, and has the same effect as if the amendatory act,—namely, section 89a,—had incorporated into it section 86 as amended in 1917, and the adopting act is not affected by subsequent amendments of the section adopted. Both parties have argued these propositions at length in their briefs.

A fundamental rule in the construction of statutes is that effect should be given to the legislative intent. (*People v. Harrison,* 191 Ill. 257.) "A thing within the intention is regarded as within the statute though not within the letter, and a thing within the letter is not within the statute

unless within the intention." (*People* v. *City of Chicago,*
152 Ill. 546.)   In view of the apparent obsession since the
passage of the revised act of 1909 to amend various sections
of that act and to add new sections and provisions to it, it
is not always clear just what was intended by the amenda-
tory acts.  We said in discussing this subject in *People* v.
*Williams,* 298 Ill. 86, that the legislature did not seem to
have any general plan as to the method of holding elections
provided for by the School law.   Briefly summarizing, by
the amendment of 1917 section 86 of the revised act of 1909
was amended to require the election of a board of educa-
tion for a township high school to be conducted under the
provisions of the Australian Ballot law.   When in 1919 ad-
ditional section 89a was added to the School law of 1909,
providing for elections to establish community high school
districts and for the election of boards of education for such
districts, that section contained a provision that "the man-
ner of holding elections shall be governed by section 86 of
this act."   It should be borne in mind that section 86 and
the amendment to it in 1917 related only to the elections
for boards of education of township high school districts.
Another act was passed in 1919 which was approved two
days after section 89a was approved, amending section 86
of the act of 1909 as amended.  That amendment was pre-
cisely the same as the amendment of 1917 except as to the
powers of a board of education in locating the school and
selection of a school house site or sites.

If it be conceded that the requirement of section 89a
that elections under that act should be conducted according
to the provisions of "section 86 of this act" meant that the
election to establish a community high school district and
the election for a board of education for such district should
be governed by section 86 as amended in 1917, we must
further consider the act of 1921 again amending section 86,
for the elections here involved were held in October and
November, 1921.  The legislature had the power to change

the manner of holding elections at its pleasure. It did by amendments to section 86 in 1921 repeal the prior amendments to that section which required the election provided for therein to be governed by the Australian Ballot law. This legislation indicates that in the judgment of the legislature no reason existed for continuing the requirement that the election provided for in section 86 as amended in 1917 and 1919 should be governed by the Australian Ballot law. As no known reason exists for requiring one law to govern elections held under the township high school provision and another under the community high school provision, it does not seem reasonable to say the legislature intended to continue the distinction after the provisions governing the elections held under section 86 in force when section 89*a* was adopted had been repealed. The adoption by section 89*a* of the provisions of section 86 by reference should not be construed to be continued after the act adopted by reference had been repealed unless it appears the legislature so intended. There is nothing to indicate such an intention. Apparently, when section 86 was amended in 1917 and in 1919 the legislature thought it wise to require township high school boards to be elected under the Australian Ballot law. The legislature in 1921 appears to have recognized that there was no reason for requiring the elections under section 86 to be governed by the Australian Ballot law, and by the act passed in that year repealed that requirement made in previous amendments, so that as the law now exists the Ballot law does not apply to elections held under section 86.

We think two acts passed in 1921, not referred to in the briefs, throw light on the intention of the legislature as to how elections were to be conducted for the organization of community high schools and elections of boards of education. Some question had arisen as to the legality of the organization of community high school districts and the election of boards of education for them. The legislature

passed two validating acts, both approved and in force May 10, 1921, to validate the districts theretofore organized and the election of boards of education for such districts. Both acts purported to validate community high school districts and declared the boards of education elected therein to be the duly constituted authority, and provided that thereafter such boards should be elected in the same manner and have the powers and duties as boards of education as provided by sections 86, 126 and 127 of the act approved and in force July 12, 1909, "as said sections now exist or may from time to time be amended or supplemented." (Laws of 1921, pp. 797-799.) We cannot attribute any other intention to the legislature than that by requiring subsequent elections of the boards of education of community high school districts to be conducted according to the provisions of section 86 as it then existed or as it might thereafter be amended, it was intended the elections should be governed by the provisions of section 86, however and whenever amended. As we have said, at the same session the legislature amended section 86 and repealed any requirement that the election provided for therein should be held under the Ballot law.

While since 1909 the mania to amend our School law has led to the enactment of legislation some of which was difficult to understand, reconcile and harmonize with other provisions of the School law and some of which was declared unconstitutional, we are of opinion the 1921 legislation clearly shows that it was the intention of the legislature to exempt elections to establish community high school districts, and for boards of education of such districts, from the provisions of the Australian Ballot law. If we are right in that conclusion,—and we feel clear that we are,—then the elections to establish the district here involved and the board of education for the district were not required to be held under the Ballot law. By sustaining the demurrer to counts 1 and 2 the court adjudged the grounds relied on

in those two counts did not entitle appellees to a judgment of ouster, and by that ruling no error was committed.

The circuit court held the irregularities in holding the election charged in the third count and the charges in the additional count were sufficient to invalidate the election to organize the district, and rendered judgment of ouster on the charges in those counts, which, so far as well pleaded, were admitted by the demurrer. The act of 1921 amending section 86 provides the form of an official ballot with a square opposite the name of each candidate. One ballot is required to be given to the voter, on the back of which the judge of election shall indorse his initials, and without leaving the enclosure where the election is held the voter is required to make a cross mark preceding the names of the candidates of his choice, or write the names in the blank space on the ballot with a square opposite and make a cross in the square opposite the names so written, fold the ballot so as to conceal the cross mark and deposit it without undue delay. The third count charges that in some of the polling places the judge of election failed to indorse the ballots with his initials; that in one polling place the ballots were initialed and numbered to correspond with the poll-book, and the voters were thereby prevented from casting their votes in secret; that the notices of election stated that the election would be held between the hours of noon and five P. M., and some of the polling places were not opened until one o'clock P. M. It does not appear that anyone who went to the polls to vote was prevented from doing so or was interfered with in voting as he desired, nor does it appear that the result of the election was in any way affected by the irregularities complained of. Such irregularities do not invalidate an election. *Behrensmeyer* v. *Kreitz,* 135 Ill. 591; *People* v. *Kinsey,* 294 id. 530.

Similar objections to the validity of the district raised by the additional count were passed upon and decided con-

trary to appellees' contention in *People* v. *Patterson,* 305 Ill. 541. In that case the district was almost identically of the same size and shape as the district here involved, and the same objections were urged to that district as are urged in the additional count in this case and were held insufficient to invalidate the district.

The judgment of the circuit court is reversed.

*Judgment reversed.*