(No. 13304.—Decree affirmed.)

THE INTEGRITY MUTUAL INSURANCE COMPANY, Appellee,
*vs.* WILLIAM H. BOYS *et al.* Appellants.

*Opinion filed June 16, 1920.*

1. CONSTITUTIONAL LAW—*general rule as to changing or repealing charter of private corporation.* The charter of a private corporation is a contract which cannot be impaired by subsequent legislation unless the right to change or repeal it is reserved or the corporation is subjected to lawful regulations to which all contracts are subject.

2. SAME—*subsequent legislatures, in exercise of police power, may enact laws affecting the previous grants to corporations.* It is within the power of subsequent legislatures to alter all grants, stipulations or restrictions as to corporations by general laws enacted under the police power.

3. INSURANCE—*business of insurance is subject to regulations in exercise of police power.* The business of insurance is a public necessity, and, the business being secured on the credit of the corporation for a cash consideration, it is stamped with a public interest and is subject to all proper and necessary regulations by the State in the exercise of the police power.

4. SAME—*the right to regulate insurance companies extends to mutual insurance companies.* It is the right and duty of the legislature, in the exercise of its police power, to adopt all such reasonable laws, rules and regulations as are necessary to secure the insured against insurance corporations not fully able to meet their obligations, and there is no limitation of such right or duty on the ground the policyholders are members of the insuring corporation.

5. SAME—*application of section 15 of act of 1915 for organization of mutual insurance corporations.* Section 15 of the act of 1915 for the organization of mutual insurance corporations, which provides that no such corporation shall issue any policy for a cash premium and without contingent liability unless it possesses a surplus of at least $100,000, applies only to corporations organized under the act, unless, under section 22, the act is adopted by resolution of a board of directors of an existing corporation.

6. CONSTRUCTION—*courts cannot construe statute as containing provision not within intention as expressed in the act.* Courts may depart from the literal meaning of a statute where the real purpose and intent of the legislature are clearly manifest; but the sole function of the courts is to determine the intention of the legislature, and they cannot insert anything which is not within the manifest intention as expressed in the act.

APPEAL from the Circuit Court of Sangamon county; the Hon. NORMAN L. JONES, Judge, presiding.

EDWARD J. BRUNDAGE, Attorney General, (CLARENCE N. BOORD, of counsel,) for appellants.

HERMAN L. EKERN, and BATES, HICKS & FOLONIE, (SAMUEL A. HARPER, of counsel,) for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The appellee, the Integrity Mutual Insurance Company, filed a bill in the circuit court of Sangamon county against the appellants, William H. Boys, Director of the Department of Trade and Commerce, and Fred W. Potter, Superintendent of Insurance, alleging that it was organized on November 30, 1910, under the act entitled "An act to incorporate and to govern fire, marine and inland navigation insurance companies, doing business in the State of Illinois," passed in 1869, as afterward amended; that it did not have and never had a surplus of $100,000, and because it did not have such surplus the appellants had notified it to cease issuing policies for one year or less for a full cash premium, and praying that the appellants should be enjoined from canceling the certificate authorizing it to transact business in this State by issuing policies of insurance for one year or less for a cash premium, or to take any other proceeding to enforce the requirement of such a surplus. The appellants demurred to the bill, and the demurrer being overruled they elected to stand by it, and a decree was entered as prayed for in the bill.

The act of 1869 provided for the organization of corporations to insure against loss or damage by fire and the risks of inland navigation and transportation. (Laws of 1869, p. 209.) There were provisions relating to corporations organized to do business on the plan of mutual insur-

ance between the members, and section 6 imposed requirements for premium notes requisite for the payment of losses and a percentage of cash.    In 1903 the act was amended and a proviso added for issuing policies for one year or less for a full cash premium, the same as stock companies, and as amended section 6 contained the following provision: "Every mutual fire insurance company organized under this act shall charge and collect in advance on each of its policies, a sum in cash, not less than ten per cent of a premium note to be mentioned in the policy, which note shall be subject to call by the board of directors, and shall be for not less than the amount of the premium for the full term of the policy according to the basis rate adopted by such company on the property covered by the policy, and the sum so collected in cash in advance shall stand as a credit on the amount of such note.    No member shall be liable on any such note after the expiration of the term for which the policy shall be written, except for liability incurred during said term.    And it shall not be lawful for any such company to issue any other kind of a policy: *Provided, however,* that nothing in this section shall be held to prohibit any such company from issuing a policy for one year or less, for a full cash premium according to the basis rate aforesaid."    (Laws of 1903, p. 220.)

In 1915 an act was passed applying only to mutual insurance corporations and was entitled "An act to provide for the organization and management of mutual insurance corporations other than life, and repealing certain acts and parts of acts therein referred to."    (Laws of 1915, p. 485.) The first fourteen sections by their language and purport are limited to corporations organized under the act, and they are followed by section 15, which is as follows: "No such corporation shall issue any insurance policy for a cash premium and without contingent liability until and unless it possesses surplus of at least one hundred thousand dollars ($100,000) and not less in amount than the capital re-

quired of domestic stock insurance companies transacting the same kind of insurance." Subsequent sections generally are either confined, in terms, to the act or refer to the corporation to which they relate as "such corporation." Section 22 applies to corporations not organized under the act, and provides that any mutual insurance company heretofore organized and doing business pursuant to the laws of the State of Illinois may, without re-organization, avail itself of and be governed by all the provisions of the act by the adoption of a resolution by the board of directors accepting the provisions of the act. Section 24 is the repealing clause and repeals an act passed in 1905 except section 13½ thereof, and an act passed in 1899, "and all provisions of an act entitled 'An act to incorporate and govern fire, marine and inland navigation insurance companies doing business in the State of Illinois,' approved and in force May 11, 1869, as amended, in conflict herewith."

The charter of a private corporation is a contract, which cannot be impaired by subsequent legislation unless the right to change or repeal it is reserved or the corporation is subjected to lawful regulations to which all contracts are subject. (*Bruffett* v. *Great Western Railroad Co.* 25 Ill. 353.) Section 25 of the act of 1869, which limited the duration of the corporations authorized, provided that the legislature might at any time alter or amend the act and provide for the closing of the business and affairs of any company formed under it. The reservation related to the whole act and extended to every provision of it. If that had not been so, the power to make the regulation here involved as to the amount of surplus required for the public protection existed under the police power. All grants, stipulations or restrictions as to corporations are within the power of subsequent legislatures under general laws enacted under the police power of the State. (*Venner* v. *Chicago City Railway Co.* 246 Ill. 170.) The business of insurance is a public necessity, and business is secured on the credit of the

corporation for a cash consideration and is stamped with a public interest and subject to all proper and necessary regulations by the State in the exercise of its police power. (*North American Ins. Co.* v. *Yates*, 214 Ill. 272.) In *Ward* v. *Farwell*, 97 Ill. 593, the court said that the business of an insurance company is to take risks in consideration of premiums paid therefor, and whenever the financial condition of a company is such that it cannot make good its losses, it has no right, in morals or law, to continue the business any longer, and to do so would be a palpable fraud upon those doing business with it: It was there held that the legislature had the constitutional right to pass the law of 1874 for the dissolution of insurance companies whenever their condition was such as to render their continuance in business hazardous to the insured.

It is the right and duty of the legislature, in the exercise of its police power, to adopt all such reasonable laws, rules and regulations as are necessary to secure the insured against corporations not fully able to meet their obligations. There is no limitation of such right or duty on the ground that the policyholders are members of a mutual insurance corporation, if in fact, and not merely in theory, one who is insured for a cash consideration, without personal liability or interest in the income, can be called a member. Section 13 of the act of 1915 declares that every policyholder shall be a member of the corporation and shall be entitled to one or more votes based upon the insurance in force, but if that includes one who deals with the company as a stock company his connection is purely nominal. In *Illinois Fire Ins. Co.* v. *Stanton*, 57 Ill. 354, the insurance company was a mutual one and it was urged that the policyholder was a member, but the court said that he stood in no different relation thereto than to any stock company, and, so far as his insurance was concerned, the transaction was no more than that of a stock company and he occupied no peculiar relation to the corporation.

The power to alter or amend the act having been reserved and the requirement of a reasonable surplus for the protection of policyholders being clearly within the legislative power, the decision in this case depends upon the interpretation of section 15 of the act of 1915. If that section applies only to corporations organized under the act the Director of the Department of Trade and Commerce and the Superintendent of Insurance had no authority to insist upon the maintenance of the surplus, but if it applies to all mutual insurance corporations it was their right and duty to enforce the provision. While the legislature had the power to alter or amend the act of 1869 and full authority under the police power to impose the regulation in the interest and for the protection of policyholders, it ought to be reasonably clear from the language employed that such was the intent. The authority to legislate and the responsibility for legislation rest with the legislature, and the province of the courts is to construe and not to make laws. Courts may depart from the literal meaning of the statute where the real purpose and intent of the legislature are clearly manifest, but their sole function is to determine the intention of the legislature and not to insert anything in the statute which is not within the plain and manifest intention as expressed in the act. (*Calkins* v. *Calkins,* 216 Ill. 458.) Beginning with the title of the act of 1915 its purpose was to provide for the organization and management of mutual insurance corporations, but while management was one of the purposes, such management would naturally be referred to the corporations organized under the act, and the use of the word was not inclusive of other corporations without some specific reference to them. The repealing clause did not purport to repeal the act of 1869, or any part of it, except such provisions as were in conflict with the later act. There was no conflict in the language of the two acts in respect to a surplus, since the act of 1869 made no ref-

erence to a surplus, and the act of 1915 merely imposed a restriction upon the right to issue policies for a cash premium without the stated surplus. Section 15 would be operative as a restriction if the words "such corporation" should be held to mean such a corporation as the corporations provided for in the preceding sections. Section 15 follows the fourteen previous sections, which relate only to corporations organized under the act, and by all definitions the word "such" refers to something that has gone before. It may refer to a person or thing previously mentioned or may be used for purposes of comparison as to quality or character. "Such a corporation" would mean a corporation similar to or of the same class or organized for a like purpose·as corporations organized under the act, but the natural import of the language used would limit its application to the corporations mentioned in the preceding sections. It would require the addition of something to change the direct meaning of the language employed, and where the effect would be to change existing rights and the intention is not clearly manifested that should not be done. Section 22 of the act of 1915 provides for the adoption of the act by resolution of a board of directors, which would give an existing corporation the advantages and subject it to the limitations of the act, but the language does not imply that an existing insurance company must either adopt the act or go out of business. If that had been the legislative intent it would naturally have been expressed. Our conclusion is that section 15 is restrictive only of corporations organized under the act, unless under section 22 the act is adopted by resolution of a board of directors.

The decree is affirmed.          *Decree affirmed.*